UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| HARTFORD INSURANCE COMPANY OF THE MIDWEST, | **Hon. Dennis M. Cavanaugh** |
| Plaintiffs, | **OPINION** |
| v. | Civil Action No. 10-CV-6441(DMC)(MF) |
| MEECORP CAPITAL MARKETS, LLLC : | |
| Defendants. | |

DENNIS M. CAVANAUGH, U.S.D.J.:

This matter comes before the Court upon Motion for Summary Judgment by Defendant Meecorp Capital Markets, LLC (June 1, 2012, ECF No. 45) and Motion for Summary Judgment by Plaintiff Hartford Insurance Company of the Midwest (June 1, 2012, ECF No. 46). Pursuant to Federal Rule of Civil Procedure 78, no oral argument was heard. After considering the submissions of all parties, and for the reasons set forth below, it is the decision of this Court that Defendant's Motion is **denied** and Plaintiff's Motion is granted **in part, denied in part**.

## I. BACKGROUND

### A. The Underlying Lawsuit[1]

Evans and Green, LLP ("E&G") commenced suit against Meecorp Capital Markets, LLC ("Meecorp") and two of its officers in the Circuit County of Green County, Missouri (hereinafter,

---

[1]This section is taken from the parties' pleadings.

1

"E&G Matter"). The Amended Complaint was filed in March 2009, and the Second Amended Complaint was filed in August 2011.

The complaints allege that Meecorp is liable for damages sustained by E&G as a result of Meecorp sending them on July 12, 2004 an alleged unsolicited advertisement via facsimile machine. E&G's Second Amended Complaint asserts the following causes of action against Meecorp:

> (1) Violation of Federal Telephone Consumer Protection Act ("TCPA"); (2) Conversion; (3) Violation of the Missouri Computer Tampering Act ("MCTA"); (4) Invasion of Privacy - Intrusion on Seclusion; and (5) Negligence.

The Second Amended Complaint seeks to have the E&G Matter treated as a class action, alleging that there exists a class of plaintiffs who were likewise harmed by the actions of Meecorp between July 19, 2002 and June 10, 2008.

The Court in the E&G Matter has yet to decide whether the class will be certified. Following that determination, the Court will schedule a trial date. If the class is not certified, the amount of damages at issue in the E&G Matter will likely be less than a thousand dollars; if the class is certified, the potential liability of Meecorp will increase significantly, to over $9,000,000.

B. The Hartford Policies

From October 13, 2002 and at all relevant times thereafter, Meecorp has had general commercial liability policies through Hartford Insurance Co. of the Midwest ("Hartford"). Since March 2010, Hartford has been providing for the legal defense of Meecorp in the E&G Matter under a reservation of rights. Hartford issued Policy No. 13 SBA LZ6892 SB to Meecorp, initially issued for the policy term October 13, 2003 to October 13, 2004, and renewed for the following pertinent policy periods: (i) October 13, 2004 to October 13, 2005; (ii) October 13, 2005 to October 13, 2006; (iii) October 13, 2006 to October 13, 2007; (iv) October 13, 2007 to October 13, 2008; (v) October

13, 2008 to October 13, 2009; (vi) October 13, 2009 to October 13, 2010; and (vii) October 13, 2010

to October 13, 2011 (collectively referred to herein as "the Hartford Policies").

      The Hartford Policies set forth their terms governing coverage, in pertinent part reproduced

below:

    A. COVERAGES
       1. BUSINESS LIABILITY COVERAGE (BODILY INJURY, PROPERTY
       DAMAGE, PERSONAL AND ADVERTISING INJURY)
       Insuring Agreement
       a. We will pay those sums that the insured becomes legally obligated to pay as
       damages because of "bodily injury", "property damage" or "personal and advertising
       injury" to which this insurance applies. We will have the right and duty to defend the
       insured against any "suit" seeking those damages. However, we will have no duty to
       defend the insured against any "suit" seeking damages for "bodily injury", "property
       damage" or "personal and advertising injury" to which this insurance does not apply..
    B. EXCLUSIONS
       1. Applicable to Business Liability Coverage
       This insurance does not apply to:
       a. Expected Or Intended Injury
          (1) Bodily injury" or "property damage" expected or intended from the
          standpoint of the insured. This exclusion does not apply to "bodily injury" or
          "'property damage" resulting from the use of reasonable force to protect
          persons or property; or
          (2) "Personal and advertising injury" arising out of an offense committed by,
          at the direction of or with the consent or acquiescence of the insured with the
          expectation of inflicting "personal and advertising injury".
       p. "Personal and Advertising Injury":
          (2) Arising out of oral, written or electronic publication of material, whose
          first publication took place before the beginning of the policy period;
          (11) Arising out of the violation of a person's right of privacy created by any
          state or federal act. However, this exclusion does not apply to liability for
          damages that the insured would have in the absence of such state or federal
          act;
   G. LIABILITY AND MEDICAL EXPENSES DEFINITIONS
       14. "Occurrence" means an accident, including continuous or repeated exposure to
       substantially the same general harmful conditions.
       15. "Personal and advertising injury" means injury ... arising out of one or more of
       the following offenses:. . .
          e. Oral, written or electronic publication of material that violates a person's
          right of privacy;

18. "Property damage" means:
    a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
    b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of "occurrence" that caused it.

In addition to the exclusions listed above, effective October 13, 2006, the Hartford Policies also contained the following specific exclusion ("the TCPA exclusion") from coverage for "bodily injury," "property damage," and "personal injury liability":

B. EXCLUSIONS
1. Applicable to Business Liability Coverage
This insurance does not apply to:
t. Violations of Statutes that Govern E-mails, Fax, Phone Calls or Other Methods of Sending Material or Information
"Bodily injury" or "property damage", or "personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:
    (1) The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;
    (2) The CAN-SPAM Act of 2003, including any amendment of or addition to such law; or
    (3) Any statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of material or information.
C. Declaratory Relief

On December 13, 2010, Hartford filed a declaratory judgment action in this Court. (ECF No. 1). In the Complaint, Hartford claims that it is not required to provide a defense to Meecorp and that Meecorp is not entitled to be indemnified by Hartford with regard to the claims being asserted in the E&G Matter.

On January 14, 2011, Meecorp filed an answer and counterclaim in response to Hartford's complaint. (ECF No. 6). Meecorp also seeks a declaratory judgement declaring that Hartford has a duty to defend and indemnify Meecorp in connection with the E&G Matter.

4

Both parties have since filed for summary judgment, and those motions are now before the Court.

## II.   STANDARD OF REVIEW

Summary judgment is granted only if all probative materials of record, viewed with all inferences in favor of the nonmoving party, demonstrate that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. See FED. R. CIV. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986). The moving party bears the burden of showing that there is no genuine issue of fact. Id. "The burden has two distinct components: an initial burden of production, which shifts to the non moving party if satisfied by the moving party; and an ultimate burden of persuasion, which always remains on the moving party." Id. The nonmoving party "may not rest upon the mere allegations or denials of his pleading" to satisfy this burden, but must produce sufficient evidence to support a jury verdict in his favor. See FED. R. CIV. P. 56(e); see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). "In determining whether there are any issues of material fact, the Court must resolve all doubts as to the existence of a material fact against the moving party and draw all reasonable inferences - including issues of credibility - in favor of the nonmoving party." Newsome v. Admin. Office of the Courts of the State of N.J., 103 F. Supp.2d 807, 815 (D.N.J. 2000), aff'd, 51 Fed. App'x 76 (3d Cir. 2002) (citing Watts v. Univ. of Del., 622 F.2d 47, 50 (D.N.J. 1980)).

## III.   DISCUSSION

### A. Statutory Damages Sought in the E&G Action

Hartford's first argument applies only to E&G's TCPA claims. In the Second Amended Complaint, E&G states seeks statutory damages of $500.00 for each alleged violation of the TCPA.

The damages provision of the TCPA provides for recovery of "actual monetary loss from such a violation, or... up to $500 in damages for each such violation, whichever is greater." 47 U.S.C. § 227(b)(3)(B).

The parties agree that while this Court will apply New Jersey law to its interpretation of the Hartford Policies, it must look to Missouri law for characterization of Meecorp's purported liability and the remedies sought. Both New Jersey and Missouri law distinguish between compensatory damages that are insurable, and penalties or punitive damages that are not insurable. Farmland Industries, Inc. v. Republic Ins. Co., 941 S.W.2d 505, 510–11 (Mo. banc 1997) (Under Missouri law, unless otherwise bargained for, the term "damages" does not include fines and penalties); see also Collier v. Roth, 468 S.W. 2d 57, 60 (Mo.Ct. App. 1971); Johnson & Johnson v. Aetna Cas. & Sur. Co., 667 A.2d 1087. 1091 (N.J. 1995) ("New Jersey sides with those jurisdictions which proscribe coverage for punitive damage liability because such result offends public policy and frustrates the purpose of punitive damage awards.") A penal statute is a law "which inflicts a forfeiture of money or goods by way of penalty for breach of its provisions." State ex. rel. McNamee v. Stobie, 92 S.W. 191, 212 (Mo. banc 1906).

The Missouri Court of Appeals recently found that damages sought under the TCPA are "both remedial - when an individual seeks recovery for actual monetary loss - and penal - when an individual seeks the statutory damages of $500.00 for each violation." Olsen v. Siddiqi, 371 S.W. 3d 93, 97 (Mo. Ct. App. 2012).Thus, when a plaintiff "opts to recover statutory damages, those damages were penal in nature, and as penalties, did not constitute 'damages' under the terms of the policy." Id.

New Jersey Courts have not yet ruled on whether the TCPA is a penal statute. "A penal

statute is one which imposes punishment for an offense against the [S]tate as compared to a wrong

against an individual. Abbott v. Drs. Ridgik, Steinberg & Assocs., P.A., 609 F.Supp. 1216, 1218

(D.N.J.1985), citing Ryan v. Motor Credit Co., 130 N.J.Eq. 531, 23 A.2d 607 (1942). The

Massachusetts Supreme Court, applying New Jersey law, held that the TCPA is "a remedial statute

intended to address misdeeds suffered by individuals, rather than one that punishes public wrongs."

Terra Nova Ins. Co. v. Fray-Witzer, 869 N.E. 2d 565, 575 (Mass. 2007). The Court continued:

> Congress spoke clearly on the animating purpose of the TCPA's facsimile advertising
> provisions, noting that a restriction was needed to prevent advertisers from unfairly
> shifting the cost of their advertisements to consumers while simultaneously preventing
> the use of their facsimile machine for legitimate purposes. See H.R.Rep. No. 102–317,
> 102d Cong., 1st Sess., at 10 (1991).[2] The aggrieved facsimile recipient is provided with a
> private right of action allowing for an injunction and recovery of actual monetary loss, or
> $500 in statutory damages for each such violation, whichever is greater. 47 U.S.C. §
> 227(b)(3). In addition, the statute provides for treble damages if a judge finds that the
> defendant wilfully or knowingly violated its terms. Id.

Id. The Court concluded that while "it is true, of course, that the statutory damages amount

allows for damages that could be somewhat greater than the actual harm suffered, depending on

the circumstances of the violation... this aspect alone, however, does not transform the TCPA into

a penal statute." Id. Additionally, finding that the TCPA is a penal statute, as the Missouri Court

did in Olsen, would be in conflict with the New Jersey policy to interpret insurance policies

liberally in favor of the insured. Id.; see also Hunt v. Hospital Serv. Plan of N.J., 162 A.2d 561

---

[2]"Facsimile machines are designed to accept, process, and print all messages which arrive
over their dedicated lines. The [facsimile] advertiser takes advantage of this basic design by
sending advertisements to available [facsimile] numbers, knowing that it will be received and
printed by the recipient's machine. This type of telemarketing is problematic for two reasons.
First, it shifts some of the costs of advertising from the sender to the recipient. Second, it
occupies the recipient's facsimile machine so that it is unavailable for legitimate business
messages while processing and printing the junk [facsimile]." H.R.Rep. No. 102–317, 102d
Cong., 1st Sess., at 10 (1991).

(N.J. 1960).

Thus while Hartford urges this Court to rule as the <u>Olsen</u> Court did, this Court does not agree that the TCPA is a penal statute, and instead aligns with the <u>Terra Nova</u> Court, finding that the TCPA is a remedial statute, and damages sought pursuant to it are insurable.

<u>B. Coverage for the E&G Action Under The Hartford Policies</u>

Before analyzing the Hartford Policies in question, the Court will set forth the basic principles of insurance contract interpretation. Under New Jersey law, the "[i]nterpretation and construction of a contract is a matter of law for the court." <u>Kaur v. Assured Lending Corp.</u>, 965 A. 2d 203, 207 (N.J. Super. Ct. App. Div. 2009)  (quoting <u>Spring Creek Holding Co. v. Shinnihon U.S.A. Co.</u>, 943 A.2d 882 (N.J. Super. Ct. App. Div), <u>cert. denied</u>, 951 A.2d 1038 (N.J. 2008); <u>see also</u> <u>Kieffer v. Best Buy</u>, 14 A. 2d 737, 742-43 (N.J. 2011). Courts should enforce unambiguous terms in an insurance policy. <u>Kampf v. Franklin Life Ins. Co.</u>, 161 A. 2d 717, 720 (N.J. 1960). Additionally, the policy should be interpreted in accordance with its plain and ordinary meaning.  <u>Longobardi v. Chubb Ins. Co. of N.J.</u>, 582 A. 2d 1257, 1260 (N.J. 1990). Absent any ambiguity, policy terms are to be afforded their plain language meaning. <u>Zacarias v. Allstate Ins. Co.</u>, 775 A.2d 1262, 1264 (N.J. 2001).

An insurer has a duty to defend an insured when the allegations contained in a complaint fall within the coverage of a liability insurance policy. <u>Voorhees v. Preferred  Mut.</u>, 607 A.2d 1255 (N.J.1992); <u>SL Industries v. American Motorists</u>, 607 A.2d 1266 (N.J. 1992); <u>see also</u> <u>Sears Roebuck & Co. v. Nat'l Union Fire Ins. Co.</u>, 774 A. 2d 526, 538 (N.J. Super. Ct. App. Div. 2001).  In determining whether a duty to defend exists, the court must  compare the allegations in the underlying complaint against the language of the insurance policy.  <u>Voorhees</u>, 607 A.2d at

8

1259 ("The duty to defend comes into being when the complaint states a claim constituting a
risk insured against."); <u>Flomerfelt v. Cardiello</u>, 997 A.2d 991, 998 (N.J. 2010) (to determine
whether a duty to defend exists, "the complaint should be laid alongside the policy.") <u>see also</u>
<u>Danek v. Hommer</u>, 100 A. 2d 198, 202-03 (N.J. Super. Ct. App. Div. 1953), aff'd o.b. 105 A.2d
677 (N. J.1954).

The Hartford Policies provides coverage for those sums that Meecorp becomes legally
obligated to pay as damages because of "bodily injury" or "property damage" that occurs during
the policy period and is caused by an "occurrence" and for "personal and advertising injury"
caused by one or more enumerated offenses committed during the policy period, subject to all the
terms fo the policy.

### 1. Whether E&G's Injuries are Covered Under the Hartford Policies

In its Second Amended Complaint, E&G alleges that Meecorp's action of sending the
alleged unsolicited fax caused damage to its facsimile machine, toner and paper and resulted in
loss of use of the same, alleging violation of the TCPA, conversion, violation of the MCTA and
negligence. (See Second Am. Compl. Counts 1,2,3, and 5). E&G also alleges that the sending of
the fax violated its privacy right of seclusion. (<u>Id.</u> at Count 4).

### a. "Property damage"

The Hartford Policies provides coverage for those sums that Meecorp becomes legally
obligated to pay as damages because of "property damage" that occurs during the policy period
and is caused by an "occurrence." Property damage is defined as "physical injury to tangible
property, including all resulting loss of use of that property."

Meecorp argues that E&G's property claims, including those asserted as part of its TCPA

claim, are covered "property damage" claims. (Meecorp Reply Br. 3, June 25, 2012, ECF No. 49). In <u>Melrose Hotel Co. v. St. Paul Fire and Marine Ins. Co.</u>, 432 F. Supp. 2d 488, 508-509 (E.D. Pa. 2006), <u>aff'd</u> 503 F. 3d 339 (3d Cir. 2007), the Court concluded that "using one's fax machine, paper and toner without permission qualifies as property damage under the Policy."[3] <u>See also</u> <u>Columbia Cas. Co. v. Hiar Holdings, L.L.C.</u>, No. 07SL-CC00520, 2011 WL 4073314, at *5 (Cir. Ct. Mo. May 18, 2011) ("The allegation that HIAR caused a junk fax advertisement to be sent in violation of the TCPA necessarily meant that HIAR caused damage through the 'expensive paper used' and through making the plaintiffs' 'fax machines] unable to process actual business communications.' Therefore, the Petition alleged 'property damage.'" (internal citations omitted)).

While the Court in <u>Melrose Hotel</u> found that the faxes fell within the policy definition of "property damage," the Court further found that the "property damage" did not result from an "event" (called an "occurrence" under the Hartford Policies) as the complaint was "seeking damages solely for intentional conduct." <u>Melrose Hotel</u>, 432 F. Supp. 2d at 509. There, the allegations in the TCPA complaint did not characterize as an accidental occurrence because the insured "knew that its actions would cause the very harm the TCPA aims to prevent." <u>Id</u>. at 510.

---

[3]The "Policy" in <u>Melrose Hotel</u> defined "property damage" with almost exact language as the language at issue:
> The Policy states: We'll pay amounts any protected person is legally required to pay as damages for covered bodily injury or property damage that: happens while this agreement is in effect; and is caused by an event.
> The Policy defines 'property damage' as: physical damage to tangible property of others, including all resulting loss of use of that property; or loss of tangible property of others that isn't physically damaged.
> The Policy defines an 'event' as: an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

<u>Melrose Hotel</u>, 432 F. Supp. 2d at 491-492.

10

The Court further held that the complaint was excluded under an exclusion (similar to the exclusion in the Hartford Policies) precluding coverage for expected or intended property damage.

This Court agrees with the <u>Melrose Hotel</u> Court in concluding that the damages alleged by E&G in regards to the fax machines constitute "property damage" as defined in the policy. With regard to whether or not the property damage was caused by an occurrence, Meecorp and Hartford vehemently disagree.

Meecorp argues that property damage claims of E&G are based on an "occurrence" and therefore covered. In support, Meecorp cites to <u>Penn Nat. Ins. Co. v. Group C Communications, Inc.</u>, No. L–134–09, 2011 WL 3241491, at *9 (N.J. Super. Ct. App. Div. Aug. 1, 2011) <u>certif. denied</u>, 209 N.J. 96 (2011) (quoting <u>Voorhees v. Preferred Mut. Ins. Co.</u>, 607 A.2d 1255, 1264 (1992):

> The prevalent rule in New Jersey is that the accidental nature of an occurrence is determined by analyzing whether the alleged wrongdoer intended or expected to cause injury. If not, then the resulting injury is accidental even if the act that caused the injury was intentional.

Meecorp's Managing Director, Michael Edrei, stated that the fax at issue was sent to a recipient on a list maintained by Meecorp of individuals and business who had previously expressed an interest in receiving the information contained in the fax, including E&G.  (Cert. of Michael Edrei ¶¶ 3-5, ECF NO. 47-1, June 18, 2012). Meecorp alleges that it was "Meecorp's good faith belief, based on their prior dealings with the recipients, including E&G, that those who were receiving the fax were willing to receive same," and that Meecorp "did not intend to send any unsolicited faxes." (<u>Id.</u> ¶¶ 4-6).

11

Hartford argues that Meecorp's "good faith belief" is not sufficient to overcome the fact that the Plaintiffs in the E&G action explicitly allege that Meecorp knowingly sent out unsolicited blast faxes.

In Penn Nat., the Defendant purchased a list of possible attendees to a trade show and then hired a third party to send fax advertisements to those on the list. Penn Nat. 2011 WL 3241491 at *1. The co-president of Defendant Corporation testified that he believed he had "permission to fax the document to each company listed." Id. at *10. The Court concluded that Plaintiff's "receipt of the fax may have been an 'occurrence' rather than an intentional wrong;" and if it was sent in good faith, it was accidental, not intentional and thus an "occurrence" under the policy. Id. See also Myron Corp. v. Atlantic Mutual Ins. Corp., No. BER-L-5539-06, 2007 WL 432623 (N.J. Super. Ct. Law Div. Jan. 22, 2007) ("The accidental nature of an occurrence is determined by analyzing whether the alleged wrongdoer (the insured) intended or expected to cause an injury. If not, then the resulting injury is accidental, even if the act that caused the injury was intentional.")

Here, E&G allege that Meecorp sent them a fax that was unsolicited, causing them damage. This Court agrees with Meecorp's distinguishing the cases cited by Hartford to support their argument that the faxes were intended, as those cases involved matters where the court had concluded that the sender of the faxes had knowingly sent the unsolicited fax. See Terra Nova, 869 N.E.2d at 570 ("Metropolitan knew full well that its facsimile advertisements would reach Massachusetts customers' facsimile machines as unsolicited. . .Metropolitan knew that these facsimile numbers represented new customers to which it had no previous connection."). Additionally, there has been no decision in the Missouri Court in the E&G Matter as to whether

Meecorp did in fact intend to send the fax to E&G or if the fax was unsolicited. There exists a question of fact as to whether the property damage incurred by Meecorp's act of sending the fax was accidental, and thus an "occurrence," or intended to cause injury and out of coverage.

      b. "Advertising injuries"

The Hartford Policies defines "advertising injury" to include an injury "arising out of" "oral, written or electronic publication of material that violates a person's right to privacy." Meecorp also argues that E&G's claims for violation of its privacy right of seclusion as set forth in E&G's TCPA claim and its common law claim are covered "advertising injuries" under Hartford's policies. (Meecorp Reply Br. 4, June 25, 2012, ECF No. 49).

Two Courts applying New Jersey law to the relevant policy language have concluded that the advertising injury provision does encompass the violation of a person's right to privacy, both in common law claims and in TCPA violations. In <u>Terra Nova</u>, the policy contained the identical definition of "personal and advertising injury" as the one at bar, and the court found that the alleged violations of the right to privacy, "in the form of statutory infractions under the TCPA, constitute covered injuries under the insurers' policies." <u>Terra Nova</u>, 869 N.E. 2d at 574. In <u>Myron Corp. v. Atlantic Mutual Ins. Corp.</u>, No. BER-L-5539-06, 2007 WL 432623, at *5 (N.J. Super. Ct. Law Div. Jan. 22, 2007), the Court held

> It is apparent that a right of privacy embraces an interest in seclusion as fully as it includes an interest in the secrecy of personal information. Accordingly, Atlantic's policy language that relates to a violation of 'a persons's right of privacy' can reasonably be understood and be expected to refer to conduct that violates a person's seclusion. Unsolicited fax transmissions. . . fall within this category.

Likewise, here, the unsolicited fax and injury alleged by E&G falls within the "advertising injury."

13

Hartford relies on <u>St. Paul Fire & Marine Ins. Co. v. Brother Int'l Corp.</u>, 319 Fed Appx.

121, 126-127 (3d Cir. 2009) to support the argument that its policies do not cover claims for the

violation of the privacy right of seclusion. However, this case is easily distinguishable. The

policy in <u>St. Paul</u> defined "advertising injury" as "making known to any person or organization

covered material that violates a person's right to privacy." <u>St. Paul</u>, 319 Fed Appx. at 125.

Hartford's policy defines "advertising injury," in relevant part, as "oral or written publication of

material that violates a person's right to privacy." The Court in <u>St. Paul</u> emphasized that "the

phrase making known suggests a focus on secrecy not present in policies which define

advertising injury offense to include 'oral or written publication of material that violates a

persons' right to privacy.' <u>Id.</u> at 124[4]. The policy language is not the same in the case at bar, and

thus the <u>St. Paul</u> holding does not affect this Court's conclusion on whether or not the alleged

violations constitute an "advertising injury."

    2. The "TCPA Exclusion

Hartford argues that the TCPA Exclusion incorporated into the Hartford Policies,

effective October 13, 2006 "unambiguously bars coverage for claims 'arising directly or

indirectly out of any action or omission that violates or is alleged to violate' the TCPA." (Pl.'s

Summ. J. 14). In its Reply Brief, Meecorp states that "the exclusion does not apply to <u>any</u> claims

that occurred prior to October 13, 2006," and also argues that the "TCPA Exclusion only applies

---

    [4]The Court in <u>St. Paul</u> specifically distinguished <u>Myron</u> and <u>Terra Nova</u> "because the
advertising injury provision in <u>Myron</u> and <u>Terra Nova</u> are worded differently than the advertising
injury provision in the instant case. Compare <u>Myron</u>... defining injury, in part as oral or written
publication, in any manner, of material that violated a person's right to privacy and <u>Terra Nova</u>
defining advertising injury, in part, as oral and written publication of material that violates a
person's right to privacy. Thus, <u>Myron</u> and <u>Terra Nova</u> do not undermine our analysis in
anyway." <u>St. Paul</u>, 319 Fed. Appx. at 125.

to claims asserted under the TCPA and other related statutes, and therefore does not apply to the common law claims asserted by E&G. (Def.'s Reply, June 18, 2012, ECF No. 47). This assertion is not supported by New Jersey law. New Jersey courts have consistently construed the phrase "arising out of" broadly in both insuring provisions and exclusions to mean "originating from," "growing out of," "connected with," having origins in" "flowing from," "incident to" or having a "substantial nexus" with the activity for which coverage is provided.  American Motorists Ins. Co. v. L-C-A Sales Co., 713 A. 2d 1007, 1010 (N.J. 1998); Records v. Aetna Life & Cas. Ins., 683 A. 2d 834, 837 (N.J. Super. Ct. App. Div. 1996); Allstate Ins.  Co. v. Moraca, 581 A. 2d 510, 514 n.1, (N.J. Super. Ct. App. Div. 1990); Westchester Fire Ins. Co. v. Continental Ins. Co., 312 A. 2d 664, 669 (N.J. Super. Ct. App. Div. 1973), aff'd o.b., 319 A. 2d 732 (N.J. 1974), certif. denied, 151 N.J. 463 (1997).

Hartford argues that as the TCPA exclusion is applicable to both the "personal and advertising injury" coverage and the "property damage" coverage, it bars coverage for all claims that occurred on or after October 13, 2006. This Court agrees. All claims asserted by E&G arise "directly or indirectly' from actions alleged to violate the TCPA; the only facts alleged by E&G are that Meecorp injured them with the alleged unsolicited fax. Thus, Hartford is not responsible for coverage for any claims that occurred on or after October 13, 2006.

3. The "Right Of Privacy Created by an Act" exclusion

The Hartford Policies bar coverage for "personal or advertising injury" "[a]rising out of the violation of a person's right to privacy created by any state or federal act. However, this exclusion does not apply to liability for damages that the insured would have in the absence of such state or federal act."

Hartford argues that as the TCPA is a federal statute that created a right of privacy, there is no coverage under the Policy for the TCPA claims in the Second Amended Complaint. Meecorp argues that the exclusion doesn't apply for two reasons: first, that the plain language of the policy states that it does not apply to common law claims, and as the exclusion only applies to "advertising injuries," the "property damage" claims stemming from the TCPA claims renders the exclusion inapplicable.

As the Second Amended Complaint alleged damages to toner, paper and loss of use of the fax machine, the TCPA claims are claims for "property damage. Melrose Hotel, 432 F. Supp. 2d at 508-509. Additionally, "Meecorp's potential liability for damages resulting from the common law claims of E&G, including its common law claim for invasion of privacy exist in the absence of the TCPA and any other statutes." (Def.'s Opp'n 23, June 18, 2012, ECF No. 47). Thus we agree with Meecorp that this exclusion does not bar the TCPA claims.

4. "The Expected or Intended" Exclusion

The "expected or intended" exclusion bars coverage where the insured is alleged to have acted intentionally and expected or intended the resulting injury. Voorhees, 607 A.2d at 1264; SL Industries, 607 A.2d at 1276. The analysis for this exclusion parallels the analysis undertaken above in determining whether the damage resulted from an "occurrence" within the meaning of both policies.

The statements of Mr. Edrei when viewed in the light of the Voorhees and Penn Nat. tests requiring an inquiry into the actor's subjective intent to cause injury suggest that E&G's receipt of the fax may have been an "occurrence" rather than an intentional wrong. Furthermore, if Meecorp "had a good faith belief that the fax was not unwelcome, then the exclusion would not

16

be applicable." <u>Penn. Nat.</u> 2011 WL 3241491 at *10 (citing <u>Terra Nova</u> 869 N.E. 2d at 571.) The facts alleged by Meecorp, as set forth in Erdei's certification and Meecorp's motion papers, when viewed in the light most favorable to Meecorp, raise a genuine issue of material fact as to whether the property damage alleged in the underlying complaint was "expected or intended" under the policies. "The operative question is the intent to injure rather than to act," thus if Meecorp's good faith belief was that their act was not unsolicited, they did not have the requisite intent to injure. <u>Voorhees</u>, 607 A. 2d at 1264. The question of whether Meecorp acted with good faith, and if that good faith was justified is a question of fact and thus whether coverage is barred by the "expected or intended" exclusion is not an appropriate one to dispense with at summary judgment.

### B. Attorney's Fees

Meecorp also argues that pursuant to R. 4:42-9(a)(6), attorney's fees may be awarded "in favor of a successful claimant" "in an action upon a liability or indemnity police of insurance." 11 *Rule* 4:42–9(a)(6) states that "[i]n an action upon liability or indemnity policy of insurance," counsel fees and costs may be awarded "in favor of a successful claimant." "Even if an insurer files a declaratory judgment action in good faith to contest its obligation to cover a claim, it must pay the insured's legal fees if it loses." <u>Myron Corp. v. Atl. Mut. Ins. Corp.</u>, 407 N.J.Super. 302, 310 (App.Div.2009), aff'd, 203 N.J. 537 (2010). Whether Meecorp is entitled to seek counsel fees under *Rule* 4:42–9(a)(6) must await determination of whether it is entitled to coverage, and is not appropriate for determination at this time.

## IV. CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment is **granted in part, denied in part**, and Plaintiff's Motion for Summary Judgment is **denied.**

DENNIS M. CAVANAUGH, U.S.D.J.

Dated: _Dec 27_, 2012

cc:     Hon. Mark Falk, U.S.M.J.
        Counsel of Record
        File

18